In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-060 CV


____________________



SAN JACINTO RIVER AUTHORITY, Appellant



V.



JERRY SIMMONS, Appellee






On Appeal from the 284th District Court


Montgomery County, Texas


Trial Cause No. 04-09-07137-CV






OPINION


 San Jacinto River Authority ("SJRA") prosecutes this interlocutory appeal from the
trial court's denial of its plea to the jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(8) (Vernon Supp. 2005). Appellee, Jerry Simmons, filed suit for personal
injuries after he slipped and fell at SJRA's sewage treatment facility. The fall occurred
during the normal course of his employment as a driver for American Water Services
Residuals Management, Inc. SJRA raised governmental immunity before the trial court
contending it was immune from Simmons' suit under certain provisions of the Texas Tort
Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001 - 101.109 (Vernon
1997 & Supp. 2005). It is undisputed that SJRA is a governmental unit as defined by the
Texas Tort Claims Act.

 The record indicates SJRA filed its plea to the jurisdiction on January 10, 2005. 
On February 1, 2005, Simmons filed both a first amended original petition and a response
to the plea to the jurisdiction. In his amended petition, Simmons alleged his fall at the
SJRA facility was due to the "negligent use and/or misuse" of a belt press and roll-off
container by unnamed SJRA employees. 

 Absent express consent of the state, sovereign immunity from suit defeats a trial
court's subject matter jurisdiction. See Texas Dep't of Transp. v. Jones, 8 S.W.3d 636,
638 (Tex. 1999). Governmental immunity operates like sovereign immunity to afford
similar protection to subdivisions of the State, including counties, cities, drainage districts,
and river authorities. See Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B) (Vernon
Supp. 2005); Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003)
(recognizing that sovereign immunity and governmental immunity are distinct concepts
although courts and litigants often use the terms interchangeably). The Texas Tort Claims
Act provides a limited waiver of governmental immunity if certain conditions are met. See
Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.025 (Vernon 1997). (1)

 A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of
subject matter jurisdiction. See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554
(Tex. 2000). Governmental immunity from suit is properly raised by such a plea. See
Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225-26 (Tex. 2004); Jones,
8 S.W.3d at 639. Whether a court has subject matter jurisdiction is a question of law. See
State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 327
(Tex. 2002); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). If a trial
court denies the governmental unit's claim of no jurisdiction, whether it has been asserted
by a plea to the jurisdiction, a motion for summary judgment, or otherwise, the Legislature
has provided that an interlocutory appeal may be brought. See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(8) (Vernon Supp. 2005); San Antonio State Hosp. v. Cowan, 128
S.W.3d 244, 245 n.3 (Tex. 2004). 

 "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate
the court's jurisdiction by alleging a valid waiver of immunity." Dallas Area Rapid
Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003); see also Texas Dep't of Criminal
Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001); Texas Ass'n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). To determine if the plaintiff has met that
burden, "we consider the facts alleged by the plaintiff and, to the extent it is relevant to
the jurisdictional issue, the evidence submitted by the parties." Texas Natural Resource
Conservation Comm'n v. White, 46 S.W.3d 864, 868 (Tex. 2001). "A trial court must
grant a plea to the jurisdiction, after providing an appropriate opportunity to amend, when
the pleadings do not state a cause of action upon which the trial court has jurisdiction." 
Harris County v. Sykes, 136 S.W.3d 635, 639 (Tex. 2004). 

 An examination of Simmons' amended petition indicates he provided no citation to
any provision of the Texas Tort Claims Act for jurisdictional support. His response to
SJRA's plea to the jurisdiction appears to focus exclusively on a particular part of section
101.021(2) as he asserts: 

 Plaintiff alleges that he was severely injured at Defendant's facility
because a belt press and a container created the harm proximately causing
Plaintiff's injury. In sum, Plaintiff's injury was caused by a condition or use
of tangible personal property. Accordingly, this Court has subject matter
jurisdiction over this case. . . .


 Plaintiff contends that SJRA employees allowed the belt press to
overfill the container, causing an ankle deep build up of sludge on the metal
skid plates. The build up of sludge was also in part due to SJRA employees
moving the container under the belt press as parts of it began to fill up with
biosolids. Both actions, using tangible property, created the harm. . . .


 Plaintiff has identified two pieces of tangible property which
separately and in combination were the instrumentalities creating the harm. 
The SJRA belt press operated by SJRA employees deposited biosolids and
over-filled the container in question with biosolids. Second, the container
was being moved by SJRA employees that also created the overfilling of the
container causing the harm. The use and misuse of both the belt press and
the container, by moving it, created the harm. (emphasis added)


 This theory of waiver appears to be supported by comments made to the trial court
during a brief non-evidentiary hearing on a motion to continue and plea to the jurisdiction,
viz: 

 [Simmons' counsel]: And they had the opportunity to take Mr.
Simmons' deposition at length, and the basis for the Motion for Continuance
is for us further identify [sic], tangible pieces of personal property that may
have caused the harm to Jerry Simmons, which would create the waiver
under Section 101.021.


 At this point in time, just based on what my client knows, we've
identified an overhead belt press and a container that was involved that
created the harm. There may or may not be additional pieces of tangible
property out there that created the harm. I don't know without further
discovery at this point. And so that is the essence of the Motion for
Continuance. 

 However, seconds later, Simmons' trial counsel, in somewhat of an "about-face,"
responded to SJRA's argument that Simmons' pleading amounted to a claim of "negligent
activity" and did not waive SJRA's immunity, with the following "clarification:" 

 [Simmons' counsel]: Just a short response, Your Honor. It's not a
negligent activity case. Obviously on the Keech case that doesn't exist. It's
just a premises defect case and it's being alleged appropriately the (sic) Court
would have jurisdiction over it.


 Now their next step might be to file a Motion for Summary Judgment,
based upon statements in my client's deposition. However, that does not
mean the Court does not have jurisdiction if we've shown that there has been
- there has been the use of tangible personal property under 101.021, Section
2 that created harm. (emphasis added)


 Now before this Court, Simmons' reply brief appears to switch his predominant
theory of waiver of immunity to "premises liability." Directing our attention to Corbin
v. Safeway Stores, Inc., 648 S.W.2d 292 (Tex. 1983), Simmons contends that he has
proven the following premises liability elements: (1) actual or constructive knowledge of
some condition on the premises by owner/operator; (2) that the condition posed an
unreasonable risk of harm; (3) that the owner/operator did not exercise reasonable care to
reduce or eliminate the risk; and, (4) that the owner/operator's failure to use such care
proximately caused the plaintiff's injuries. See id. at 296. As we noted above, in a suit
against a governmental unit, it is the plaintiff's burden to affirmatively demonstrate the
trial court's jurisdiction by alleging and proving a valid waiver of immunity. See Whitley,
104 S.W.3d at 542; Miller, 51 S.W.3d at 587. In an abundance of caution, we will
attempt to address both his waiver by use-or-misuse-of-tangible-personal-property theory,
and his waiver by premises defect theory. 

 The Texas Tort Claims Act provides for a limited waiver of immunity for personal
injury caused by a governmental employee's negligent use or misuse of tangible personal
property under section 101.021(2), but only when the governmental unit is itself the user. 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 1997); Cowan, 128
S.W.3d at 245-46. In the instant case, the only record-evidence alleged to support
Simmons' pleadings as to how the excessive biosolid material came to be present in the
area where he fell is his deposition testimony, and that testimony merely describes a
generalized scenario, either previously witnessed by Simmons or reported to him in some
manner, in which a roll-off container is filled with biosolid material by SJRA employees. 
At no point in his deposition does Simmons indicate he witnessed or had personal
knowledge that SJRA employees did indeed cause the roll-off container to overflow with
the specific biosolid material in which he slipped and fell. 

 Furthermore, Simmons' allegation that his injuries resulted from the use or misuse
of the belt press, a motor-driven piece of equipment, is also misplaced. The Texas
Supreme Court has consistently required a nexus between the operation or use of motor-driven equipment and a plaintiff's injuries. See Whitley, 104 S.W.3d at 543; LeLeaux v.
Hamshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 51 (Tex. 1992). Such a nexus
requires more than mere involvement of equipment but rather "the equipment's use must
have actually caused the injury." Whitley, 104 S.W.3d at 543 (quoting White, 46 S.W.3d
at 869 and Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d
339, 342-43 (Tex. 1998)). Even if the evidence sufficiently indicated the excess biosolid
material present on the morning of the accident was indeed the result of the belt press
having overfilled the roll-off container, these items of "tangible personal property,"
(and/or "motor-driven equipment") were not responsible for Simmons' injuries if they did
no more than furnish the condition that made his injury possible. See Whitley, 104 S.W.3d
at 543; Miller, 51 S.W.3d at 588. See also Bossley, 968 S.W.2d at 343 (Unlocked
hospital doors which permitted a mental patient to escape into the community where he
committed suicide may have "furnish[ed] the condition that [made] the injury possible .
. . [but] the use and condition of the doors were too attenuated from [the patient's] death
to be said to have caused it."). The record-evidence before us raises nothing more than
an inference that the belt-press and roll-off container furnished the condition (presence of
excess biosolid material) that made Simmons' injuries possible. Under his use-or-misuse-of-tangible-personal-property theory of waiver, Simmons has failed to affirmatively
demonstrate the trial court's jurisdiction.

 In addition to potential exposure to suit caused by personal injury or death arising
out of conditions or use of tangible personal property, a governmental unit may be subject
to suit for personal injury or death caused by a condition of real property if the state would
be liable if it were a private person. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2)
(Vernon 1997); County of Cameron v. Brown, 80 S.W.3d 549, 554 (Tex. 2002). Simmons
relies on Corbin, 648 S.W.2d at 296, in setting out the elements of proving liability for an
ordinary premises defect as between a private property owner and an invitee. This is all
well and good; however, Simmons' classification of himself as an invitee, and not a
licensee, is incorrect. He fails to acknowledge the provisions of Tex. Civ. Prac. & Rem.
Code Ann. § 101.022(a) (Vernon 1997), which state that if a claim arises from a premises
defect, the governmental unit owes to the claimant only the duty that a private person owes
to a licensee on private property, unless the claimant pays for the use of the premises. 
Simmons' attempt to turn his status into a "fact issue" is misplaced, as it ignores both the
plain language of the statute and established precedent. 

 Simmons uses interchangeably the terms "premises defect" and "special defect." 
Whether a condition is a premise defect or a special defect is a function of the "duty"
element in a negligence action requiring statutory interpretation and, therefore, is an issue
of law for the court to decide. See State Dep't of Highways & Pub. Transp. v. Payne, 838
S.W.2d 235, 238 (Tex. 1992). "A special defect must be a condition of the same kind or
class as an excavation or roadway obstruction and present 'an unexpected and unusual
danger to ordinary users of roadways.'" State v. Rodriguez, 985 S.W.2d 83, 85 (Tex.
1999); Payne, 838 S.W.2d at 238. A special defect is distinguished by some unusual
quality outside the ordinary course of events. A longstanding, routine, or permanent
condition is not a special defect. See Stokes v. City of San Antonio, 945 S.W.2d 324, 326
(Tex. App.--San Antonio 1997, no writ). From the entirety of the deposition excerpt
provided, we do not find that Simmons' encounter with an excess amount of biosolid
material on the morning in question presented "an unexpected and unusual danger," or was
a condition of "unusual quality outside the ordinary course of events" for him, based upon
his four-year experience on the job. Therefore, the duty SJRA owed Simmons upon a
claim of ordinary premises defect is that duty which an ordinary person owes to a licensee
on private property. See Payne, 838 S.W.2d at 237. 

 The duty owed to a licensee on private property is not to injure the licensee by
willful, wanton, or grossly negligent conduct, and to warn of, or make reasonably safe,
a dangerous condition of which the premises owner is aware but the licensee is not. See
Wal Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). The Court in Wal
Mart further stated:

 Accordingly, to establish liability for a premises defect, a licensee
must prove, among other things, that the licensee did not actually know
about the alleged dangerous condition. See, e.g., State v. Williams, 940
S.W.2d 583, 584 (Tex. 1996); State Dep't of Highways & Pub. Transp. v.
Payne, 838 S.W.2d 235, 237 (Tex. 1992) (citing [State v.] Tennison, 509
S.W.2d [560,] [ ] 562 [(Tex. 1974)]; Restatement (Second) Of Torts §
342). If the licensee has the same knowledge about the dangerous condition
as the licensor, then no duty to the licensee exists. Tennison, 509 S.W.2d
at 562; see also Williams, 940 S.W.2d at 584; Payne, 838 S.W.2d at 237.


 For example, in Lower Neches Valley Auth. v. Murphy, this Court
held that "[a] licensee is not entitled to expect that the possessor [of land]
will warn him of conditions that are perceptible to him, or the existence of
which can be inferred from facts within his present or past knowledge." 536
S.W.2d 561, 564 (Tex. 1976). In other words, a licensor owes no duty to
a licensee so long as the evidence conclusively establishes the licensee
perceived the alleged dangerous condition. See id. at 564.


 Simmons' deposition indicates that, prior to the day he fell, he encountered slippery
biosolid material in the area where he worked "every day," and when he arrived at the
SJRA facility on the day of the accident, he knew that the area where he would be working
could be "wet and muddy." This and other similar testimony from Simmons indicates he
was fully aware of the slippery conditions in which he admittedly worked "[t]wo to three
times a day, three to five days a week . . . [f]or four years." By his own admission, the
possibility of an excessively slippery work-area on the day of the accident was well-known
to Simmons, or could have been inferred by him from facts within his then-present or past
knowledge. See Wal Mart, 102 S.W.3d at 709. In summary, Simmons' testimony that
he knew of the potential slip hazard established he was aware of the hazardous condition
on the date of the accident. Simmons cannot sustain an action under the Tort Claims Act
for injuries which resulted from a condition of which he was aware.

 From the discussion and analysis set out above, we find Simmons has failed to
affirmatively demonstrate the trial court's subject matter jurisdiction over the causes of
action alleged. Neither the pleadings nor the relevant evidence submitted was sufficient
to prove waiver of governmental immunity under the provisions of the Texas Tort Claims
Act. The trial court erred in failing to grant SJRA's plea to the jurisdiction. As the record
reflects Simmons amended his original petition following SJRA's filing of its plea to the
jurisdiction, Simmons was given adequate opportunity to remedy any jurisdictional defects
present in its original pleadings, or submit evidence sufficient to show his lack of
knowledge. Therefore, we reverse the order of the trial court denying SJRA's plea to the
jurisdiction and render judgment that Simmons' suit is dismissed with prejudice. See
Sykes, 136 S.W.3d at 639-40. 

 REVERSED AND RENDERED.



 ______________________________

 STEVE MCKEITHEN

 Chief Justice 

Submitted on May 6, 2005

Opinion Delivered June 30, 2005


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Section 101.021 provides:


 A governmental unit in the state is liable for:


 (1) property damage, personal injury, and death proximately caused
by the wrongful act or omission or the negligence of an employee acting
within his scope of employment if:

 (A) the property damage, personal injury, or death arises from
the operation or use of a motor-driven vehicle or motor-driven
equipment; and 

 (B) the employee would be personally liable to the claimant
according to Texas law; and 

 (2) personal injury and death so caused by a condition or use of
tangible personal or real property if the governmental unit would, were it a
private person, be liable to the claimant according to Texas law.